UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| JOANNA L. PFEISTER,<br><br>    Plaintiff,<br><br>    v.<br><br>RSUI INDEMNITY COMPANY, et al.,<br><br>    Defendants. | Case No. 20-cv-03387-LB<br><br>**ORDER GRANTING RSUI'S MOTION FOR SUMMARY JUDGMENT** |

**INTRODUCTION**

The plaintiff Joanna Pfeister, who is representing herself, sued RSUI Indemnity Company, which insures her condominium association, for its failure to defend her in a state criminal lawsuit.[1] RSUI moved for summary judgment on the grounds that (1) the criminal claims against Ms. Pfeister were made in February 2019, before the policy's effective dates of April 1, 2019 to April 1, 2020, and (2) the policy covers "wrongful acts," and the criminal action is not a claim for a wrongful act. The court grants the motion on both grounds.

---

[1] Notice of Removal – ECF No. 1 at 2 (¶ 6); State Compl. – ECF No. 1-1 at 2–9; Am. Compl. – ECF No. 104 at 2–8. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 20-cv-03387-LB

**STATEMENT**

The following sections summarize (1) the criminal charges, (2) Ms. Pfeister's position as a director of her condominium association, Gramercy Towers Condominium Association, (3) the relevant parts of the insurance policy, (4) Ms. Pfeister's tender of the defense of her criminal case and subsequent communication with RSUI, and (5) the case's procedural history.

**1. Criminal Charges**

On January 30, 2019, Ms. Pfeister attended a settlement conference in a civil lawsuit in San Francisco Superior Court called *Kazuko Artus v. Gramercy Towers Condominium Association*.[2] On February 1, 2019, the San Francisco District Attorney charged Ms. Pfeister in a criminal complaint with the following charges based on her conduct on January 30, 2019: (1) felony assault on a public official, Commissioner Pang Ly; (2) felony criminal threats against her condominium association's lawyer, Cang Le; (3) misdemeanor assault on Cang Le; and (4) misdemeanor disturbance of the peace.[3] The record reflects other appearances by Ms. Pfeister in the criminal case: (1) the initial appearance on February 4, 2019, where the Assistant District Attorney gave her a copy of the criminal complaint and a signed protective order directing her to stay 150 yards away from Pang Ly and Cang Le, and Ms. Pfeister waived time for her arraignment;[4] (2) a status conference on March 15, 2019, where Ms. Pfeister again waived time for arraignment;[5] and (3) the arraignment on April 2, 2019, where Ms. Pfeister pleaded not guilty to the charges, and the court denied a modification of the stay-away order and set the next hearing for May 14, 2019.[6]

---

[2] Pfeister Decl. – ECF No. 12-1 at 2 (¶ 8); Compl., *Artus v. Gramercy Towers Condo. Ass'n*, CGC-17-561765, Ex. 6 to Req. for Judicial Notice ("RJN") – ECF No. 20-4 at 2–19. The court takes judicial notice of the state-court records. *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (courts "may take judicial notice of undisputed matters of public record, including documents on file in federal or state courts") (cleaned up).

[3] Felony Compl., Ex. 1 to RJN – ECF No. 80 at 2; Sheriff's Department Chronological Report of Investigation, Ex. 1 to RJN – ECF No. 113 at 4.

[4] Feb. 4, 2019 Minutes, Ex. 2 to RJN – ECF No. 80-2 at 2; Feb. 4, 2019 Tr., Ex. 4 to RJN – ECF No. 80-4 at 2–8.

[5] Mar. 15, 2019 Minutes, Ex. 5 to RJN – ECF No. 80-5 at 2.

[6] Apr. 2, 2019 Minutes, Ex. 3 to RJN – ECF No. 113 at 17.

ORDER – No. 20-cv-03387-LB    2

Ms. Pfeister asserts that she received the criminal complaint on April 2, 2019 and not at the February 4, 2019 hearing.[7] The February 4, 2019 transcript belies that account:

> [Sierra] Villaran [Deputy Public Defender, appearing specially as a friend of the court]: Can she also have a copy of her complaint to give to her potential counsel?
>
> The Defendant [Ms. Pfeister]: Please.
>
> [Sarah] Spielberger [Assistant District Attorney]: Will the record please reflect service of the criminal protective order on Defendant through Ms. Villaran.
>
> The Court: And do you also have a copy of the complaint?
>
> Ms. Spielberger: Yes. I'm providing that now.
>
> The Court: Thank you.[8]

### 2. Director of the Condominium Association

Ms. Pfeister is a director of her condominium association and, according to the association's election report, was elected to that position on April 11, 2019 for a two-year term through January 2021. The report shows that there was an annual meeting of the association's members on March 30, 2019, the meeting was reconvened on April 11, 2019, the term of the elected members was two years, and the terms for the elected directors (Ms. Pfeister, Stephen Rogers, and Joseph Tobin II) expires in January 2021.[9]

### 3. The Insurance Policy

RSUI issued Gramercy a "Non-Profit Organization Management Liability Policy" that covers directors of the association for certain claims — including claims for wrongful acts by a director acting on behalf of Gramercy that gives rise to claims in civil or criminal proceedings — in the policy period, which is April 1, 2019 to April 1, 2020.[10] The policy includes a "Duty to Defend" provision, whereby RSUI must defend any covered claim against an insured person (defined in

---

[7] Pfeister Decl. – ECF No. 112 at 2 (¶ 6), 3 (¶ 11).

[8] Feb. 4, 2020 Tr., Ex. 4 to RJN – ECF No. 80-4 at 8.

[9] Election Report, Ex. A to Hildebrandt Decl. – ECF No. 79-3 at 2–4.

[10] Policy, Ex. 6 to Magaro Decl. – ECF No. 79-5 at 2, 5, 25–30.

ORDER – No. 20-cv-03387-LB                                    3

relevant part as a "past, present, or future director").[11] The application for the policy (which is part of the policy) asks the applicant to submit a list of current directors and officers.[12] Gramercy submitted its application on February 13, 2019, lists the association's current directors (Phil Hand and Stephen Rogers, with terms from March 2017 to March 2019, and Joe Tobin, with a term from February 2018 to February 2020), and does not identify Ms. Pfeister as a director.[13]

**4.  Tender of the Defense and Subsequent Communications**

Ms. Pfeister tendered her defense to RSUI on June 21, 2019 through an email from Gramercy's broker, HUB International Insurance Services, which provided a summary from Ms. Pfeister that she attended the settlement conference, with her colleagues Stephen Rogers, David Westzel, and Jyotsna Bires and the board's attorney, Cang Le, to try to resolve the case on behalf of the Gramercy Towers Homeowners Association.[14]

On September 12, 2019, RSUI accepted the defense under a reservation of rights based on Ms. Pfeister's representation that she was "attending the settlement conference alleged in the Felony Action in the capacity of a member of Gramercy's Board of Directors."[15] RSUI identified as coverage issues whether the criminal case was a claim made during the policy's effective dates and whether Ms. Pfeister was acting as a board member when she assaulted Commissioner Ly and Attorney Le.[16] It also noted the potential application of California Insurance Code § 533.3, which "states California's strong public policy against providing insurance with respect to criminal actions and precludes insurance from providing defense or indemnity coverage for certain criminal actions."[17] It advised the following about the policy's $100,000 retention:

---

[11] *Id*. at 6, 27.

[12] *Id.* at 5, 39.

[13] *Id*. at 38–44.

[14] June 21, 2019 Letter, Ex. 7 to Magaro Decl. – ECF No. 79-6 at 2–4.

[15] Sept. 12, 2019 Letter, Ex. 8 to Westfall Decl. – ECF No. 79-8 at 9.

[16] *Id.* at 11–12.

[17] *Id*. at 10–11.

ORDER – No. 20-cv-03387-LB    4

> A Retention of $100,000 applies to this claim. Under Condition B.3 of the of the RSUI Policy's Common Policy Terms and Conditions Coverage Section (Non-Profit) form, RSUI has no coverage obligation under the RSUI Policy until the "Insured" has paid the applicable retention for each "Claim." The retention is reduced solely by covered "Loss," including "Defense Expenses." Under these provisions, Gramercy is responsible for the first $100,000 of Loss, including Defense Expenses and RSUI is only liable for allocated Loss in excess of that Amount.[18]

RSUI noted that it had the right to appoint counsel to defend the case and asked whether Ms. Pfeister was asking for appointed counsel (given her September 11, 2019 email that she was defending herself and was not asking RSUI to appoint counsel at the time).[19] On October 2, 2019, Ms. Pfeister told RSUI that she wanted to retain James Lassart as her defense lawyer, and RSUI responded that it had worked with his firm, "that [it] would not be an issue here," and "are you asking to assign Mr. Lassart as your defense counsel."[20]

On November 11, 2019, Mr. Lassart wrote RSUI's counsel a letter about coverage, pointing out that (1) Gramercy issued a November 2018 notice about the election for the Gramercy Board, (2) the closing date for board nominations was December 27, 2018, (3) there were four applications for four seats (including Ms. Pfeister's application) as of that closing date, and (4) that meant that Ms. Pfeister would be a board member.[21] He also suggested that there were delays in the election process based on board member Stephen Rogers's transgender bias and a lack of understanding about Ms. Pfeister's status as a veteran.[22]

On November 14, 2019, RSUI disclaimed coverage for the state criminal action on the ground that Ms. Pfeister was not a board member at the time of the January 30, 2019 incident.[23] It also identified as coverage issues whether the January 30, 2019 incident was a claim made during the

---

[18] *Id.* at 9.

[19] *Id.* at 9–10.

[20] Oct. 2, 2019 Email, Ex. 4 to Pfeister Decl. – ECF No. 112 at 19.

[21] Lassart Letter, Ex. 5 to *id.* – ECF No. 112 at 22–23.

[22] *Id.* at 22.

[23] Nov. 14, 2019 Letter, Ex. 9 to Westfall Decl. – ECF No. 79-9 at 2, 9.

1   policy period (April 1, 2019 to April 1, 2020) and the effect of Cal. Ins. Code § 533.3, which

2   governs insurance coverage for criminal actions.[24]

### 5. Procedural History

Ms. Pfeister filed the complaint against RSUI in San Francisco Superior Court on April 24, 2020, claiming (1) breach of contract, (2) defamation, (3) intentional infliction of emotional distress, and (4) fraud in the form of intentional or negligent misrepresentation, concealment, and related theories.[25] She seeks damages, including exemplary damages, totaling $10 million.[26] RSUI removed the case to federal court based on diversity jurisdiction.[27] (The parties are diverse, and the claimed damages exceed the diversity threshold.[28]) All parties consented to magistrate-judge jurisdiction.[29]

The court previously denied Ms. Pfeister's motion for a preliminary injunction.[30] On September 22, 2020, RSUI moved for summary judgment.[31] On October 2, 2020, the court granted Ms. Pfeister leave to amend her complaint to add two RSUI executives, Dave Leonard and Andy Whittington, as defendants.[32] The amended complaint is otherwise identical to her original complaint.[33] RSUI moved to dismiss the new defendants for lack of personal jurisdiction and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[34] The court held a hearing

---

[24] *Id.* at 9–10.

[25] State Compl. – ECF No. 1-1 at 2–8.

[26] *Id.* at 9.

[27] Notice of Removal – ECF No. 1 at 2 (¶ 4).

[28] State Compl. – ECF No. 1-1 at 3 (¶ 10) (seeking $10 million in damages); Notice of Removal – ECF No. 1 at 3 (¶ 10) (the plaintiff is a citizen of California), (¶ 11) (the defendant is a New Hampshire corporation with its principal place of business in Georgia).

[29] Consents – ECF Nos. 10, 15.

[30] Order – ECF No. 28.

[31] Mot. – ECF No. 79.

[32] *Id.* – ECF No. 99.

[33] Am. Compl. – ECF No. 104.

[34] Mot. – ECF No. 121. The court overrules Ms. Pfeister's objection to so-called reply evidence because there was no reply evidence. Obj. – ECF No. 122.

1    on November 19, 2020 for the summary-judgment motion. At the hearing, Ms. Pfeister said that
2    the dismissal of the state-court criminal case would moot this case and that the state court might
3    dismiss her case on January 7, 2021.[35]

4    Ms. Pfeister filed several motions after the November 19 hearing: (1) a motion for partial
5    summary judgment for breach of contract based on RSUI's failure to defend her; (2) a motion for
6    sanctions based on RSUI's alleged misrepresentation about the timeliness of her claim; and (3) a
7    motion for partial summary judgment, again alleging coverage.[36]

## SUMMARY-JUDGMENT STANDARD

The court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Material facts are those that may affect the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine if there is enough evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248–49.

The party moving for summary judgment has the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only

---

[35] Nov. 11, 2019 Hearing Tr. – ECF No. 135 at 6:28–28, 7:1–3.
[36] Mots. – ECF Nos. 136, 140, 145.

1  point out 'that there is an absence of evidence to support the nonmoving party's case.'")

2  (quoting *Celotex*, 477 U.S. at 325).

3  If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. *Nissan Fire*, 210 F.3d at 1103. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. *Devereaux*, 263 F.3d at 1076. If the non-moving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

In ruling on a motion for summary judgment, inferences drawn from the underlying facts are viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ANALYSIS

RSUI moves for summary judgment on the coverage claim on two grounds: (1) the claim was outside the policy period and (2) the criminal action is not a "wrongful act" covered by the policy.[37] The court grants summary judgment on the coverage claim on both grounds.

First, the claim here (the February 1, 2019 criminal complaint based on acts on January 30, 2019) is not in the April 1, 2019 to April 1, 2020 policy period. RSUI contends that Ms. Pfeister learned about the criminal charges on February 4, 2020, almost two months before the policy's effective date of the policy on April 1, 2019.[38] "[A] claim is not made until the party against whom it is asserted has notice of the claim." *Safeco Surplus Lines Co. v. Emp. Reinsurance Corp.*, 11 Cal. App. 4th 1403, 1407 (1992) (cleaned up). The undisputed facts establish that Ms. Pfeister knew about the criminal charges on February 4, 2020, at her initial appearance. Ms. Pfeister asserted at the hearing that — despite the transcript's showing her receipt of the complaint — she did not receive it. That assertion is not supported by facts, and even if it were, the court does not need to credit an incredible account contradicted by a public-record proceeding. *Cf. Jeffreys v.*

---

[37] Mot. – ECF No. 79 at 11–18.

[38] *Id*. at 12–14. RSUI also moves for partial summary judgment in the alternative.

1  *New York*, 426 F.3d 549, 551–55 (2nd Cir. 2005) (upheld the district court's holding that no jury

2  could believe the plaintiff's testimony when it was contradicted by previous statements and

3  medical evidence). Moreover, there are no disputed issues of fact about whether the district

4  attorney charged Ms. Pfeister in February 2020 (it did) and whether she knew about it (she did).

5      Second, the criminal action in any event was not a "wrongful act" covered by the policy. A

6  "wrongful act" is an act by an insured person (such as a director) while "acting in his or her

7  capacity as such and on behalf of" Gramercy.[39] The undisputed evidence establishes that Ms.

8  Pfeister was elected to the Gramercy Board on April 11, 2019, after the alleged assault on January

9  30, 2019 and after the initiation of the criminal action in February 2019.[40]

10     Ms. Pfeister's tort claims — defamation, intentional infliction of emotional distress ("IIED"),

11 and fraud in the form of intentional or negligent misrepresentation and concealment — are

12 predicated on the coverage claim. The court grants summary judgment on these claims too.

13     First, to the extent Ms. Pfeister bases her defamation and fraud claims on RSUI's statements

14 that the criminal action was not covered under the policy, those claims fail because RSUI's

15 statements are not false. *Grenier v. Taylor*, 234 Cal. App. 4th 471, 486 (2015) ("defamation is the

16 intentional publication of a statement of fact that is false . . . [and] the plaintiff must present

17 evidence of a statement of fact that is provably false") (cleaned up); *Beard v. Int'l Bus. Mach.*

18 *Corp.*, No. C 18-06783 WHA, 2019 WL 1516592, at *2 (N.D. Cal. Apr. 7, 2019) ("The elements

19 for fraud claim are: (1) a misrepresentation, (2) knowledge of falsity, (3) intent to defraud, (4)

20 justifiable reliance, and (5) resulting damage . . . a claim for negligent misrepresentation does not

21 require knowledge of falsity, but instead requires a misrepresentation of fact by a person who has

22 no reasonable grounds for believe it to be true") (cleaned up).

23     Second, the record does not support Ms. Pfeister's contention that RSUI's initial offer to

24 defend her, subject to a reservation of rights, and its later determination that the claim was not

25 covered, was "outrageous conduct" with "intention to cause or reckless disregard of the

---

27 [39] Policy, Ex. 6 to Magaro Decl. – ECF No. 79-5 at 28.

28 [40] Election Report, Ex. A to Hildebrandt Decl. – ECF No. 79-3 at 2–4.

United States District Court
Northern District of California

probability of causing emotional distress." *Frazier v. Aegis Wholesale Corp.*, No. C-11-4850 EMC, 2011 WL 6303391, at *7–8 (N.D. Cal. Dec. 16, 2011) (dismissing IIED claim based on a bank's alleged misrepresentation when there was no allegation of a specific intent to inflict emotional distress); *Faulks v. Wells Fargo & Co.*, 231 F. Supp. 3d 387, 410–11 (N.D. Cal. 2017) (granting summary judgment on IIED claim because, among other things, the plaintiff did not offer evidence of Wells Fargo's misrepresentation).

## CONCLUSION

The court grants RSUI's motion for summary judgment. The court's rulings mean that Ms. Pfeister's other motions are dismissed as moot.[41]

This disposes of ECF Nos. 79, 136, 140, and 145.

**IT IS SO ORDERED.**

Dated: December 29, 2020

_____
LAUREL BEELER
United States Magistrate Judge

---

[41] Mots. – ECF Nos. 136, 140, 145.